# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

SAMANTHA K.,[1]                       Case No. 3:23-cv-268
      Plaintiff,                    Rose, J.
                                    Litkovitz, M.J.

vs.

COMMISSIONER OF                **REPORT AND**
SOCIAL SECURITY,             **RECOMMENDATION**
      Defendant.

Plaintiff Samantha K. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 10), the Commissioner's response in opposition (Doc. 12), and plaintiff's reply memorandum. (Doc. 13).

## I. Procedural Background

This is plaintiff's fourth case before this Court. Plaintiff protectively filed her applications for DIB on April 17, 2009 and SSI on March 31, 2009, alleging disability beginning April 20, 2006, due to anxiety, arthritis, bulging discs, mood changes, and anger issues. (Tr. 332-38, 339-41, 361). Her applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* video hearing before administrative law judge (ALJ) Shirley Moscow Michaelson. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing on March 20, 2012. (Tr. 106-152). On June 4, 2012, the ALJ

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

issuing a decision denying plaintiff's applications. (Tr. 78-105). The Appeals Council denied plaintiff's request for review, making the ALJ's decision final for purposes of judicial review. (Tr. 58-63).

On June 4, 2013, plaintiff appealed the final decision of the Commissioner in this Court. *See* [*Samantha K.*] *v. Comm'r of Soc. Sec.*, No. 3:13-cv-178 (S.D. Ohio). Upon the parties' joint motion, the matter was remanded to the Commissioner. (Tr. 161-63). After the Appeals Council issued a remand order (Tr. 164-68), a telephone hearing was held on July 22, 2014, with ALJ David A. Redmond. (Tr. 41–57). On November 14, 2024, ALJ Redmond denied plaintiff's applications. (Tr. 12-40). The Appeals Council again denied plaintiff's request for review. (Tr. 1-11).

On July 28, 2016, plaintiff again appealed the final decision of the Commissioner. *See* [*Samantha K.*] *v. Comm'r of Soc. Sec.*, No. 3:16-cv-317 (S.D. Ohio).[2] Following judicial remand, a hearing was held on August 27, 2019, before ALJ Gregory G. Kenyon. (Tr. 1516-43). On October 1, 2029, ALJ Kenyon again denied plaintiff's applications. (Tr. 1481-1514, (duplicate at Tr. 2709-43).

 Plaintiff again filed an appeal with this Court. *See* [*Samantha K.*] *v. Comm'r of Soc. Sec.*, No. 3:20-cv-404 (S.D. Ohio).[3] Following judicial remand, a new hearing was held on March 28, 2023, once more before ALJ Gregory G. Kenyon. (Tr. 2688-2708). Plaintiff and a VE appeared and testified at the hearing. (*Id.*). On May 25, 2023, ALJ Kenyon once again issued a decision denying plaintiff's DIB and SSI applications. (Tr. 2652-87). The Appeals

---

[2] For the sake of clarity, the Court will reference this case as *Samantha K. I.*
[3] For sake of clarity, the Court will reference this case as *Samantha K. II.*

Council denied plaintiff's request for review, making the May 25, 2023 decision the final decision of the Commissioner. (Tr. 2646-51). Plaintiff has sought review of that decision in the case at bar.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

3

> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).[4] The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### C. The Administrative Law Judge's May 25, 2023 Findings on Remand

On remand, ALJ Kenyon applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2011 (Ex. 14D).
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since April 20, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. [Plaintiff] has the following severe impairments: cervical and lumbar degenerative disc disease; obesity; bipolar disorder; anxiety disorder; and a history of opiate abuse. (20 CFR 404.1520(c) and 416.920(c)).

---

[4] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical . . . and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively." *Miller v. Comm'r of Soc. Sec.*, No. 3:18-cv-281, 2019 WL 4253867, at *1 n.1 (S.D. Ohio Sept. 9, 2019) (quoting *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007)). The Court's references to DIB regulations should be read to incorporate the corresponding and identical SSI regulations, and vice versa, for purposes of this Report and Recommendation.

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the [plaintiff] is limited to occasional crouching, crawling, kneeling, stooping and climbing ramps and stairs but can never climb ladders, ropes or scaffolds. The [plaintiff] can have no exposure to hazards such as unprotected heights or dangerous machinery. The [plaintiff] is limited to simple, routine repetitive tasks. The [plaintiff] is limited to occasional contact with coworkers and supervisors but no contact with members of the public. The [plaintiff] cannot perform fast paced work or that involves strict production quotas. The [plaintiff] is limited to very little, if any, change in the job duties or work routine from one day to the next day.

6. [Plaintiff] has no past relevant work.[5]

7. [Plaintiff] was born . . . [in] 1979 and was 27 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. [Plaintiff] has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the [plaintiff] does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[6]

---

[5] ALJ Kenyon made this determination under the new expedited processes set forth in 20 C.F.R. §§ 404.1520(h) and 416.920(h), which give adjudicators the discretion to proceed to the fifth step of the sequential evaluation process when they have insufficient evidence or information about a claimant's past relevant work history to make the findings required at step 4. (Tr. 2672, 2704).

[6] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled occupations such as inspector/hand inspector (57,000 jobs nationally), marker (139,000 jobs nationally), and sorter (35,000 jobs nationally). (Tr. 2673, 2705).

5

11. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from April 20, 2006, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 2657-73).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry:  (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, __ U.S. __, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination.  Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746).

6

*See also Wilson*, 378 F.3d at 545–46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Relevant Medical Evidence

#### 1. *Plaintiff's mental health treatment history with Dr. Singh*

Plaintiff received long-term mental health treatment and therapy at Advanced Therapeutic Services from March 2007 to early 2012, then at Clearing Paths Therapeutic Services from approximately December 2011 until September 2014.[7]  She was seen by initially by Dr. Mark E. Blair, Dr. Darshan Singh, Dr. Ramakrishna Gollamudi, and therapist Darrell Guest, MSW, LSW, at both Advanced Therapeutic Services and Clearing Paths.

Plaintiff was initially assessed at Advanced Therapeutic Services on March 3, 2007, by Dr. Blair.  (Tr. 551-554).  Dr. Blair listed plaintiff's Axis I diagnoses as moderate to severe depression disorder, anxiety, and pain disorder associated with both psychological factors and general medical condition.  (Tr. 554).

Dr. Singh first examined plaintiff on July 5, 2007, while she was still a patient with Dr. Blair.  (Tr. 547).  Plaintiff's diagnosis of bipolar first appeared in Dr. Singh's progress notes on November 12, 2007.  (Tr. 542).  She was treated by Dr. Singh every four to six weeks for several

---

[7] Because plaintiff's arguments are based on the ALJ's decision in regard to Dr. Singh and Mr. Guest, the Court limits its review accordingly.  However, for the sake completeness and to put plaintiff's treatment in full context, the Court notes that after leaving Clearing Paths, the record shows plaintiff was treated at Wellness Card by Shiriann Knight, M.D., from January 2015 (Tr. 1878-1880) to November 2022 (Tr. 2860).  Dr. Knight's initial assessment of plaintiff included that plaintiff suffered from depression, excessive sleep, mood cycling, and racing thoughts; she was diagnosed with bipolar disorder. (Tr 1878-1880).  Dr. Knight treated plaintiff on a regular basis.  (Tr. 1850, 1851, 1852, 1854, 1855, 1856, 1857, 1858, 1859, 1860, 1861, 1862, 1863, 1864, 1865, 1866, 1867, 1868, 1869, 1870, 1871, 1872, 1873, 1874, 1875, 1876, 1877, 2483, 2484, 2485, 2486, 2487, 2488, 2489, 2491, 2492, 2493, 2494, 2860, 2861, 2862, 2863, 2864, 2865, 2866, 2867, 2868, 2870, 2871, 2872, 2874, 2875).

years at Advanced Therapeutic Services, Inc. (Tr. 522-526, 528, 529, 530, 531, 532, 534, 535, 536, 537, 538, 539, 540, 541, 542, 543, 544, 545, 546, 547, 615, 616, 617, 618, 619, 620, 621, 622, 624, 625, 626, 627, 1003, 1004, 1005, 1006, 1010, 1012, 1014, 1016, 1017, 1061, 1062, 1063, 1064,1065). Plaintiff also treated with Dr. Singh at Clearing Paths Therapeutic Services. (Tr. 1130, 1208, 1796, 1797).

Beginning on August 6, 2008, plaintiff also treated with Dr. Gollamudi at Advanced Therapeutic when Dr. Singh was out of the office. (Tr. 533, 527, 521, 614, 623). On March 2, 2012, Dr. Gollamudi completed a Psychiatric Evaluation on plaintiff at Clearing Paths Therapeutic Services. (Tr. 1136-1138). Dr. Gollamudi noted plaintiff had mood swings, anger, poor sleep, depression, anxiety, worried a lot, and when angry "blacks out." (Tr. 1136). On mental status examination Dr. Gollamudi reported depression, anxiety, and "moods." (Tr. 1137). It appears plaintiff was seen primarily by Dr. Gollamudi while at Clearing Paths for approximately two years. (Tr. 1131, 1132, 1186, 1187, 1188, 1189, 1190-1207, 1209, 1210, 1473, 1474-1477).

### 2. *Plaintiff's mental health treatment history with Mr. Guest*

Plaintiff also received mental health therapy with Mr. Guest, who primarily treated her from 2008 to 2014. During those years, Mr. Guest treated plaintiff at the same clinics as Dr. Singh and Dr. Gollamudi.

Plaintiff initially saw Mr. Guest for a Psychosocial Assessment and Initial Treatment Plan on June 24, 2008 at Advanced Therapeutic Services. (Tr. 565-67). He noted the reasons plaintiff sought treatment included: "emotional –cry alot [sic]," "depression," "recently lost

hope," daily mood swings, impulse, "panic attacks when around a lot of people," anger, "anxiety-in a hurry," and "[no] self-esteem." (Tr. 565-66). As "barriers," Mr. Guest wrote "speaking [with] others," "meeting new people" and crowds. (Tr. 566). He noted "[client] has frequent mood swings that affect her living life." (*Id*.). Plaintiff continued receiving therapy from Mr. Guest at Advanced Therapeutics. (Tr. 628, 629, 630, 631, 632, 633, 634, 635, 636, 637, 638, 639,1007, 1008, 1009, 1011, 1013, 1015).

Mr. Guest then treated plaintiff at Clearing Paths and completed an Adult Diagnostic Assessment on her on December 20, 2011. (Tr. 1122-1126). Mr. Guest's notes regarding plaintiff's symptoms include depression, daily mood swings, excessive sleep, anger, easily agitated, family issues, arguing, and fighting. (Tr. 1122). Mr. Guest noted plaintiff's previous diagnosis of bi-polar disorder, and noted plaintiff was taking Chlonopin and Zoloft. (Tr. 1123). Current problem areas included depressed mood/sad, anxiety, anger/aggression, and mood swings/hyperactivity. (Tr. 1125). He noted that plaintiff lacks motivation, sleeps excessively, is helpless and hopeless, and has a racing heart, racing mind, daily mood swings, and back problems. (*Id*.). He listed her primary diagnosis as bipolar with a current GAF of 51. (*Id*.).

Plaintiff continued therapy with Mr. Guest for several years. (Tr. 1128, 1129, 1133, 1134, 1135, 1378, 1379, 1380, 1382, 1383, 1384, 1792, 1793, 1794, 1795). In a December 2014 discharge summary, Mr. Guest rated "overall progress in treatment" as "not improved." (Tr. 1789).

9

### 3.  *Dr. Singh's functional capacity assessment of plaintiff*

Dr. Singh completed a medical functional capacity assessment for plaintiff on behalf of the local county department of Job and Family Services in June 2010.  (Tr. 1930).  He had been treating plaintiff at Advanced Therapeutic Services every four to six weeks for three years at that point.  Dr. Singh opined that plaintiff was markedly limited in her ability to: understand and remember short and simple instructions; remember locations and work-like procedures; carry out short or detailed instructions; perform activities within a schedule; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; make simple work related decisions; interact with the general public; get along with coworkers or peers; maintain socially appropriate behavior; respond in appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; and set realistic goals and make plans independently of others.  (Tr. 1930).

### 4. *Dr. Singh's and Mr. Guest's responses to interrogatories*

Dr. Singh and Mr. Guest answered interrogatories on behalf of plaintiff for her claim for social security benefits on March 7, 2011.  (Tr. 1048-60).[8]  They noted plaintiff had started treatment for bipolar disorder in 2007 and was last seen at that time on February 14, 2011.  (Tr. 1048-49).  They opined that plaintiff was extremely limited in her ability to maintain social functioning; markedly limited in her abilities to perform activities of daily living; and markedly limited in her ability to maintain concentration, persistence or pace in a work environment.  (Tr. 1056-1057).  They explained that plaintiff would be unable to be prompt and regular in

---

[8] In the context of this case, the interrogatories are treated as Dr. Singh's treating physician opinion.  *See Hargett*, 964 F.3d at 552-54.

attendance; respond appropriately to supervision, co-workers, and customary work pressures; sustain attention and concentration on work to meet normal standards of work productivity and accuracy; understand, remember, and carry out simple work instructions without requiring very close supervision; relate predictably in social situations; demonstrate reliability; and perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. In support of plaintiff's work-related limitations, the treating sources explained that plaintiff has a difficult time staying on task; is easily agitated and frustrated; loses attention and focus easily; forgets her appointments; isolates herself from people; easily forgets; is easily distracted; and needs constant reminders. (Tr. 1050-56). Dr. Singh and Mr. Guest opined that plaintiff had no useful ability to make occupational adjustments, performance adjustments, and personal-social adjustments. (Tr. 1058-60).

### 5. *Mr. Guest's Mental Impairment Questionnaire*

On February 22, 2023, Mr. Guest completed a "Mental Impairment Questionnaire." (Tr. 3000-3003). He noted he had treated plaintiff for over ten years. He listed plaintiff's DSM-V diagnosis as bipolar. For plaintiff's symptoms, Mr. Guest noted poor memory; sleep disturbance; emotional lability; feelings of guilt and worthlessness; difficulty thinking or concentrating; time or place disorientation; deceased energy; and generalized persistent anxiety. (Tr. 3003). Mr. Guest opined that plaintiff would have marked limitations in her ability to learn, recall or use information; relate to work with supervisors, coworkers and the public; focus attention on work activities; and regulate her emotions, control her behavior, and maintain well-

11

being in a work setting. Mr. Guest assessed that plaintiff would be off task 20% of the workday and absent more than three times per month. (Tr. 3000-03).

### E. Specific Errors

In her statement of errors, plaintiff alleges this case was remanded by the Court because the ALJ failed to properly evaluate the opinions of treating psychiatrist Darshan Singh, M.D., and treating therapist Darrell Guest, MSW, LSW. Plaintiff argues the ALJ basically repackaged the prior ALJ's decision and seemingly ignored the Court's prior decision by committing essentially the same errors again. (Docs. 10 and 13).

The Commissioner counters that the ALJ properly evaluated plaintiff's treating physician's opinions in accordance with the applicable regulations. In crafting plaintiff's RFC, the ALJ properly explained the reasons he gave partial weight to the medical opinion of the state agency medical consultants, little weight to the consultative examiner's opinion, and no controlling or deferential weight to her treating psychiatrist's and therapist's opinions. (Doc. 12 at PageID 3085-96).

### F. Treating Physician Rule[9]

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight

---

[9] On January 18, 2017, the Social Security Administration promulgated "Revisions to Rules Regarding the Evaluation of Medical Evidence," which, among other things, served to eliminate the treating physician rule for claims filed on or after March 27, 2017. *See* 82 Fed. Reg. 5844, 2017 WL 168819 (Jan. 18, 2017) (to be codified at 20 C.F.R. pts. 404, 416). Because plaintiff's application was filed prior to the effective date of March 27, 2017, the treating physician rule is still applicable to her claims.

than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion "controlling weight," the ALJ must balance the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544. "In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other

factors which tend to support or contradict the opinion." *Quattlebaum v. Comm'r of Soc. Sec.*, 850 F. Supp. 2d 763, 771 (S.D. Ohio 2011) (citing 20 C.F.R. § 416.927(d)(3)-(6); *Wilson,* 378 F.3d at 544). When considering the medical specialty of a source, the ALJ must generally give "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." *Quattlebaum*, 850 F. Supp. 2d at 771 (quoting 20 C.F.R. § 416.927(d)(5)).

> Separate from the treating physician rule, but closely related, is the requirement that the ALJ "always give good reasons" for the weight ascribed to a treating-source opinion. 20 C.F.R. § 404.1527(c)(2); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (calling the good reasons rule "an additional procedural requirement associated with the treating physician rule"). The purpose of the good reasons rule is twofold: first, "to let claimants understand the disposition of their cases"; and second, to "ensure[ ] that the ALJ applies the treating physician rule and permit[ ] meaningful review of the ALJ's application of the rule." *Blakley*, 581 F.3d at 407 (quoting *Wilson*, 378 F.3d at 544); *accord Rogers*, 486 F.3d at 242–43 (quoting *Wilson*).

*Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 552 (6th Cir. 2020).

### 1. *"Other source" providers*

A provider, such as a therapist, is not an "acceptable medical source"; instead, he falls into the "other source" category. *Mays v. Comm'r of Soc. Sec.*, No. 1:14-cv-647, 2015 WL 4755203, at *7 (S.D. Ohio Aug. 11, 2015), *report and recommendation adopted*, 2015 WL 5162479 (S.D. Ohio Sept. 3, 2015) (citing Soc. Sec. Ruling 06-03p, 2006 WL 2329939; 20 C.F.R. §§ 404.1502, 416.902). As such, his opinions are not presumptively entitled to controlling weight. *Id*. "[I]nformation from 'other sources' cannot establish the existence of a medically determinable impairment[; nonetheless,] the information 'may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.'" *Cruse v.*

*Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007) (quoting SSR 06–03p, 2006 WL 2329939, at *3).

### G. Prior decisions from the Court

To put the current case in context, the Court finds a review of its two prior decisions in this matter, in relevant part, to be helpful.

#### 1. *Samantha K. I* decision

Relevant to the present case, the Court in *Samantha K. I*, stated:

Dr. Singh opined in March 2011 that Plaintiff has "extreme" limitations in her ability to maintain social functioning, and is "markedly limited" in her ability to perform activities of daily living and maintain concentration, persistence or pace in a work environment.  PageID 79-80. The ALJ assigned Dr. Singh's opinion "no weight whatsoever," finding that it was "neither well supported by medically acceptable clinical and laboratory diagnostic techniques nor consistent with other substantial evidence in the case record."  PageID 79.  Instead, the ALJ concluded that Dr. Singh's opinion "could only be based on uncritical acceptance of the claimant's subjective complaints."  *Id.*

The ALJ's statement in this regard fails to satisfy the requirements of the treating physician rule set forth in 20 C.F.R. § 404.1527(c).  *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013).  The ALJ's conclusory statement— that Dr. Singh's opinion is not "well supported by medically acceptable clinical and laboratory diagnostic techniques nor consistent with other substantial evidence in the case record[,]" PageID 79—is ambiguous because "[o]ne cannot determine whether the purported problem is that the opinions rely on findings that are not objective (*i.e.*, that are not the result of medically acceptable clinical and laboratory diagnostic techniques, *see* 20 C.F.R. § 404.1527(c)(2)), or that the findings are sufficiently objective but do not support the content of the opinions." *Gayheart*, 710 F.3d at 377.

Further, insofar as the ALJ may have concluded that the record was devoid of any clinical findings, such conclusion is unsupported by substantial evidence.  In fact, Plaintiff's treatment records reflect that, upon examination, she consistently appeared tired, depressed, anxious, irritable, overwhelmed, worried and withdrawn. PageID 587, 589, 596, 602, 603-05, 607-09, 677-81, 683, 1068-69, 1071, 1075, 1077, 1081-82, 1126-30, 1177-79.  Insofar as the ALJ concluded that such clinical

findings do not support Dr. Singh's opinion, the ALJ sets forth no specific or meaningful explanation in that regard. In light of these objective clinical findings, the ALJ's conclusion—that Dr. Singh's opinion must be based on "uncritical acceptance of [Plaintiff's] subjective complaints"—is unsupported by substantial evidence. *See supra.*

With regard to the purportedly inconsistent "other substantial evidence in the case record" undermining Dr. Singh's opinion, it is not entirely clear what evidence the ALJ references. *See* PageID 79. Insofar as the ALJ relied on the opinions of "[o]ther mental health professionals" who purportedly presented less drastic assessments of the claimant's mental functioning capabilities, *see* PageID 573, 577-79, 661, 665-67, such reliance—in declining controlling weight to Dr. Singh's opinion—is error. *See Gayheart*, 710 F.3d at 377 (holding that "the conflicting substantial evidence must consist of more than the medical opinions of the nontreating and nonexamining doctors" because "[o]therwise the treating-physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion").

Insofar as the other purported substantial evidence of record are Global Assessment of Functioning ("GAF") scores of 51 and 58, the Court notes that a GAF score is merely a "snapshot of a person's 'overall psychological functioning' at or near the time of evaluation[,]" and its relevance "is isolated to a relatively brief period of time[.]" *Laning v. Comm'r of Soc. Sec.*, No. 3:15-CV-75, 2016 WL 1729650, at *6 (S.D. Ohio Mar. 28, 2016) (citing *White v. Colvin*, No. 3:13CV00171, 2014 WL 2813310, at *10 (S.D. Ohio June 23, 2014)). As a result, GAF scores have "little value in assessing disability[,]" *id.*, and it is generally improper for an ALJ to rely on a GAF score to discredit a medical source's specific opinion about an individual's work-related abilities and limitations. *Mosley v. Comm'r of Soc. Sec.*, No. 3:14-CV-278, 2015 WL 6857852, at *5 (S.D. Ohio Sept. 14, 2015) (citations omitted).

*Samantha K. I*, 2017 WL 4276657, at *4-5 (notes omitted) (Tr. 1545-1554).

## 2. *Samantha K. II* decision

The ALJ thereafter issued a decision following *Samantha K. I*. That decision was

appealed to this Court, which issued *Samantha K. II*. Relevant to the case at bar, the Court stated

in *Samantha K. II* as follows:

16

The ALJ acknowledged that Dr. Singh served as Plaintiff's treating psychiatrist and mentioned the concept of controlling weight. However, the ALJ did not properly analyze the opinion under the two conditions of the treating physician rule. The ALJ did not discuss the second condition of the treating physician rule—whether the opinion is not inconsistent with the other substantial evidence in the case record. And, although the ALJ discussed whether Dr. Singh's opinion was supported by Plaintiff's treatment record, it is not clear from the ALJ's discussion whether he intended to discuss the first condition of the treating physician rule—whether the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques—or the supportability factor.

Notably, the treating physician rule does not require that a treating physician's opinion be supported by a totality of the treatment records; it requires the opinion be "well-supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1527(c)(2). "For a medical opinion to be well-supported by medically acceptable clinical and laboratory diagnostic techniques, it is not necessary that the opinion be fully supported by such evidence." Soc. Sec. R 96-2p, 1996 WL 374188, *2; *see Goffe v. Comm'r of Soc. Sec. Admin.*, No. 3:18cv115, 2019 WL 3406433, at *4 (S.D. Ohio July 29, 2019), *report and recommendation adopted*, No. 3:18cv115, 2019 WL 4016276 (S.D. Ohio Aug. 26, 2019). Thus, to the extent that the ALJ required Dr. Singh's opinion to be supported by the totality of treatment records in order to assign it controlling weight, the ALJ erred.

Furthermore, by focusing only on support, the ALJ improperly collapsed the two-stage analysis of a treating physician's opinions and thus avoided a central feature of the Regulations: "[I]n all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding." *Rogers*, 486 F.3d at 242 (citing and quoting parenthetically Soc. Sec. R. 96–2p, 1996 WL 374188, at *4 ("In many cases, a treating physician's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.")).

Moreover, substantial evidence does not support the ALJ's decision to discount Dr. Singh's opinion based on the purported lack of support from treatment records showing that Plaintiff's "generally stable level of psychological functioning." (Doc. #10, *PageID* #1539). Although the ALJ's [sic] found that the record contains only "references to mood cycling" and "some periodic exacerbations of her bipolar symptoms," a review of Plaintiff's treatment records demonstrates that she experienced ongoing symptoms, including mood swings, racing thoughts, depression, irritability/anger, anxiety, and difficulty sleeping. *Id.* at 576, 580-90, 592, 594, 598, 600, 604, 659, 661-63, 670-76, 1049-52, 1056, 1060, 1106-09, 1176-

77.  Furthermore, Mr. Guest regularly indicated between January 2009 and July 2010 that Plaintiff's progress was unimproved.  *Id.* at 670-81, 1052, 1054, 1056, 1058, 1060.  The ALJ erred in selectively focusing on the "stable" aspects of Plaintiff's treatment notes to the exclusion of evidence supportive of Dr. Singh's opinion.  *See Foster v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 709, 714-15 (S.D. Ohio 2019) (citing *Hawthorne v. Comm'r of Soc. Sec.*, No. 3:13-cv-179, 2014 WL 1668477, at *11 (S.D. Ohio Apr. 25, 2014) (citing *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000)) (An "ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his [or her] position"); *cf. Carter v. Comm'r of Soc. Sec.*, 137 F.Supp.3d 998, 1007 (S.D. Ohio 2015) (finding error where the ALJ referenced only normal findings while either ignoring or minimizing abnormal findings).

In sum, the ALJ did not properly consider Dr. Singh's opinions under the legal criteria mandated by the treating physician rule and the regulatory factors.  "Because the reason-giving requirement exists to 'ensur[e] that each denied claimant receives fair process,' we have held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence*, even where the conclusion of the ALJ may be justified based upon the record.'" *Blakely*, 581 F.3d at 407 (quoting *Rogers*, 486 F.3d at 243).  Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.

*Samantha K. II,* 2022 WL 952906, at *4-5.  (Tr. 2744-2754).

**H.  Analysis of the ALJ's most recent decision.**

As noted in *Samantha K. II*, this matter was previously reversed and remanded by this Court to the Commissioner because the ALJ failed to properly analyze Dr. Singh's opinions under the two conditions of the treating physician rule.  The Court determined that the ALJ failed to discuss whether Dr. Singh's opinions were not inconsistent with the other substantial evidence in the case record.  (Tr. 2750).  The Court also found the ALJ did not clearly explain whether Dr. Singh's opinions were well-supported by the medically acceptable clinical and laboratory techniques.  (*Id.*).  Rather, the ALJ seemingly required the "totality" of plaintiff's treatment

records to support Dr. Singh's limitations in contravention of Social Security Ruling 96-2p, 1996 WL 374188, *2, which states, "For a medical opinion to be well-supported by medically acceptable clinical and laboratory diagnostic techniques, it is not necessary that the opinion be fully supported by such evidence." (Tr. 2751). The Court additionally determined that the ALJ's decision discounting Dr. Singh's opinion based on the purported lack of support from treatment records showing that plaintiff's "generally stable level of psychological functioning" was not supported by substantial evidence given plaintiff's treatment records demonstrating ongoing symptoms, including mood swings, racing thoughts, depression, irritability/anger, anxiety, and difficulty sleeping. (Tr. 2752).

Plaintiff contends the ALJ reversibly erred in failing to follow the Court's Remand Order and by failing to properly evaluate the treating physician's opinions. The undersigned agrees.

As an initial matter, the remand decision by ALJ Kenyon does not recite the proper legal standard or acknowledge or identify Dr. Singh as a treating physician. Nor does it follow the two step process for evaluating the opinions of treating physicians: whether the opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2); *see Wilson*, 378 F.3d at 544. Nevertheless, the ALJ's decision states that he "considered opinion evidence in accordance with the requirements of 20 C.F.R. 404.1527 and 416.927," which are the regulations governing opinion evidence, and he used the terms "controlling weight" and "deferential weight," which are the legal terms for analyzing opinion evidence. The Court will therefore examine the substance of the ALJ's decision.

On remand, ALJ Kenyon stated he declined to give "controlling weight" to Dr. Singh's opinions, stating neither "the treatment records nor the longitudinal record [are] consistent with the severity of the limitations opined." (Tr. 2670). The ALJ cited to plaintiff's diagnoses of anxiety disorder and major depressive disorder, her consistent attendance of outpatient therapy, and her receipt of prescription medications. (Tr. 2670). The ALJ then cited to findings which purportedly support Dr. Singh's opinions (Tr. 2671, citing generally to the Advance Therapeutic records, some findings of the consultative examiner, plaintiff's own functional report (Tr. 389), and pain management records); he then cited to some records which purportedly do not support Dr. Singh's opinions (Tr. 2671) (citing specific records from Clearing Paths, Ohio Pain Solutions, Advanced Therapeutic, Dayton Pain Center, Dayton Outpatient Center, Dr. Kramer's consultative examination); and he concluded Dr. Singh's opinions are not entitled to any deference.

Once again, the ALJ "improperly collapsed the two-stage analysis of a treating physician's opinions." (Tr. 2751). As this Court stated in its previous decision, "[I]n all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding." *Rogers*, 486 F.3d at 242 (citing and quoting parenthetically Soc. Sec. R. 96–2p, 1996 WL 374188, at *4) ("In many cases, a treating physician's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight."). (Tr. 2751). By failing to first address the reasons why Dr. Singh's opinions were purportedly not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" before addressing the

20

purported inconsistency of the opinions with the other record evidence, the Court is unable to discern the evidentiary basis for the ALJ's decision.

The ALJ's decision includes the statement, "The abnormalities notes [sic] were based on the claimant's subjective reports and objective findings were consistently normal." (Tr. 2671). The Court cannot discern whether the ALJ's statement regarding plaintiff's subjective reports and objective findings is intended to reference the medical findings cited by the ALJ which directly precede this statement (citing findings from Advanced Therapeutic, Dr. Kramer's consultative examination, and pain management records) or the recitation of evidence that follows the statement.

To the extent the ALJ was referencing the findings from the Advanced Therapeutics records and other sources that supported Dr. Singh's opinions, the ALJ's statement is not an accurate characterization of the findings based on the consultative examiner's testing and the Advance Therapeutics records showing abnormalities on mental status examination as discussed further below. In addition, like *Samantha K. I*, "Insofar as the ALJ concluded that such clinical findings do not support Dr. Singh's opinion, the ALJ sets forth no specific or meaningful explanation in that regard. In light of these objective clinical findings, the ALJ's conclusion— that Dr. Singh's opinion must be based on 'uncritical acceptance of [Plaintiff's] subjective complaints'—is unsupported by substantial evidence." (Tr. 1551).

To the extent the ALJ intended to address his statements about Dr. Singh's notes, the ALJ's decision fares no better. The ALJ stated Dr. Singh's treatment notes "frequently described the claimant as 'ok' or 'stable.'" (Tr. 2671) (citing Ex. 6F/1, 5, 6, 17, 29, 15F/1-5, 7, 9, 10, 12-

14, 26F/8, 15, 30F/3, 33F/2).  The ALJ also stated that Dr. Singh "reported the claimant's

symptoms were improving."  (Tr. 2671) (citing Ex. 26F/2, 10, 12, 30F/4, 33F/3, 35F/1, 38F/1).

The ALJ's decision suffers from the same deficiencies previously identified by this

Court.  Once again, the ALJ seemingly required a totality of the evidence to support Dr. Singh's

opinions when "it is not necessary that the opinion be fully supported by such evidence."  (Tr.

2751) (quoting SSR 96-2p, 1996 WL 374188, *2).  In support of his decision to deny any weight

to Dr. Singh's opinions, ALJ Kenyon placed emphasis on notations in Dr. Singh's progress notes

marking plaintiff as "symptoms improved" or "stable."  However, these are relative concepts and

must have context for their relevancy.  *See McQueen v. Comm'r of Soc. Sec.*, No. 1:13-cv-88,

2014 WL 533496, at *9 (S.D. Ohio Feb. 11, 2014), *report and recommendation adopted*, 2014

WL 879880 (S.D. Ohio Mar. 5, 2014) (citing *Boulis–Gasche v. Comm'r of Soc. Sec.,* 451 F.

App'x 488, 494 (6th Cir. 2011)) ("The ALJ made no inquiry into the degree of improvement, or

from what baseline Plaintiff had improved.  Under the ALJ's logic, any improvement in one's

mood, regardless of how small and from what level the individual improved, would defeat a

claim of mental impairment.  This cannot be so.").  That these terms, without more, are not

substantial evidence to support the ALJ's rejection of a treating physician's opinion has

previously been addressed by this Court:

> The Social Security regulations recognize that a claimant's level of functioning may
> vary considerably over time and that longitudinal evidence is required in the case
> of mental impairments.  20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(D)(2).
> "Improvement" in the level of mental functioning is a relative concept and is
> dependent on the base level from which the improvement is measured:
>
>> Even if [a doctor's] use of the word "better" referred to Plaintiff's
>> mood, this word did not provide the ALJ with substantial evidence

> from which to find that Plaintiff's mental impairment had subsided.
> The ALJ made no inquiry into the degree of improvement, or from
> what baseline Plaintiff had improved. Under the ALJ's logic, any
> improvement in one's mood, regardless of how small and from what
> level the individual improved, would defeat a claim of mental
> impairment. This cannot be so.

*Fithen v. Comm'r of Soc. Sec.*, No. 1:15-cv-213, 2016 WL 1381822, at *8 (S.D. Ohio Apr. 6,

2016), *report and recommendation adopted,* 2016 WL 2731683 (S.D. Ohio May 10, 2016)

(quoting *Boulis-Gasche*, 451 F. App'x at 494).

When examined in context, the notations of "improved" or "stable" do not provide

substantial support for the ALJ's conclusions. The treating psychiatric progress notes routinely

show a "yes" response for "symptoms improved," while the substance of the progress notes that

follow show the waxing and waning of plaintiff's depression, anxiety and bipolar symptoms as

well as adjustments in her treatment regimen. On plaintiff's initial visit with Dr. Singh on July 5,

2007, Dr. Singh marked plaintiff's symptoms as improved, while also noting she was positive for

depression, anxiety, irritability/anger and anxiety. (Tr. 547). Dr. Singh's subsequent progress

notes sometimes marked the "yes" response to "symptoms improved" while also documenting

positive signs of depression, anxiety, irritability, anger, mood swings, low energy, or sleep

problems. (Tr. 523, 524, 525, 526, 528, 530, 531, 534, 531, 532, 536, 538, 539, 541, 543, 546,

615, 616, 617, 618, 619, 620, 622, 623, 625, 626, 627, 1004, 1010, 1012, 1113, 1014, 1112,

1114, 1117, 1118). Dr. Singh's notes also document frequent adjustments to plaintiff's

medication regimen. (Tr. 525, 528, 529, 530, 534, 535, 537, 538, 619, 621, 1003, 1004). For

example, Dr. Singh's October 11, 2010 progress note marks plaintiff's symptoms as improved

while simultaneously noting plaintiff's positive mood symptoms, irritability/anger, and anxiety.

23

(Tr. 1004). Dr. Singh added a prescription for Seroquel to plaintiff's existing medication regimen of Klonopin, Abilify, and Wellbutrin. (*Id*.). The following month on November 8, 2010, Dr. Singh again marked plaintiff's symptoms as improved and her mood symptoms as stable while also doubling her dosage of Wellbutrin, adding the new medication Trazadone, and continuing her prescriptions for Abilify and Klonopin. (Tr. 1003). Dr. Singh's notes also report plaintiff as being on edge, with depression, mood swings, and anger. (Tr. 535, 540). The ALJ's brief references to improvement and stability do not accurately reflect plaintiff's functioning at this time.

Dr. Singh's notes must also be viewed in the context of the therapy notes from Mr. Guest, another mental health provider at Advanced Therapeutic Services and then later at Clearing Paths, who treated plaintiff in conjunction with Dr. Singh. Mr. Guest's initial assessment and treatment plan with plaintiff was completed on June 24, 2008. (Tr. 565-566). On this assessment he noted plaintiff was emotional, cried a lot, and had recently lost hope. She suffered from depression, daily mood swings, anxiety, and panic attacks when around a lot of people. (*Id*.). As barriers, he noted "speaking with others" and "meeting new people." (*Id*.). During his ongoing therapy with plaintiff, Mr. Guest routinely rated plaintiff's progress as "unimproved," and on mental status examination he noted anxiety, crying spells, racing thoughts, frequent mood swings, increased depression, isolation, and increased fatigue. (*See, e.g.,* Tr. 555, 556, 557, 558, 559, 560, 561, 562, 563, 564, 566, 628, 629, 630, 631, 632, 633, 634, 636, 637, 638, 639, 1007, 1008, 1009, 1011, 1013, 1015, 1116, 1133, 1134, 1135).

24

Mr. Guest continued therapy with plaintiff at Clearing Paths, where Dr. Singh also continued to occasionally treat plaintiff.  Mr. Guest's December 20, 2011 Adult Diagnostic Assessment noted symptoms of depression, daily mood swings, excessive sleep, anger, easily agitated, and family issues.  Problem areas included lack of motivation, excessive sleep, feeling helpless and hopeless with a bleak future, hyper-heart start(s) racing, mind racing, sleepless nights, daily mood swings, back problems, and "physically there but not mentally there."  (*Id*.).  Her primary diagnosis was bi-polar disorder.  On mental status examination, he reported plaintiff's thought process was loose, racing, and flight of ideas; her mood was depressed, anxious, and irritable; her behavior was restless; and she exhibited impaired attention and concentration.  (Tr. 1127).  Mr. Guest continued to treat plaintiff over the next several years, and in his December 2014 discharge summary, Mr. Guest rated plaintiff's "overall progress in treatment" as "not improved."  (Tr. 1789).

When viewed in the context of plaintiff's entire treatment at Advance Therapeutic Services and Clearing Paths, the ALJ erred by relying on Dr. Singh's notations of "improved" symptoms and treatment notes describing plaintiff as "stable" or "ok" to the exclusion of the evidence above that supports Dr. Singh's opinions.  *See Shafor v. Comm'r of Soc. Sec*., No. 1:19-cv-860, 2020 WL 7639616, at *8 (S.D. Ohio Dec. 23, 2020), *report and recommendation adopted,* 2021 WL 185078 (S.D. Ohio Jan. 19, 2021) (citing *Boulis-Gasche*, 451 F. App'x at 494) ("Other than the one-sentence conclusory assertion that plaintiff's treatment records showed improvement with therapy, the ALJ did not point to any specific evidence, or any specific treatment records, to support her conclusion for discounting [the treating physician's] opinion.").

Moreover, once the ALJ declined to give Dr. Singh's opinions controlling weight, he was required to "also provide an analysis of the factors under 20 C.F.R. § 404.1527(d)." *Hargett*, 964 F.3d at 552 (citing *Rogers*, 486 F.3d at 245-46; *Cole*, 661 F.3d at 938). ALJ Kenyon, however, did not apply any of the regulatory factors in weighing Dr. Singh's opinions. Even if a treating physician's opinion is not entitled to controlling weight, "the ALJ must still determine what weight to give the opinion by balancing a host of factors: the length, frequency, nature, and extent of the treatment relationship; the degree to which the treating source's opinion is supported by relevant evidence and consistent with the overall record; the specialization of the treating source; and any other relevant factors." *Hargett*, 964 F.3d at 552 (citing 20 C.F.R. § 404.1527(c)(2)–(6); *Gayheart*, 710 F.3d at 376). The ALJ did not acknowledge Dr. Singh's specialization as a psychiatrist; his nearly four year treatment history with plaintiff prior to rendering his 2011 opinion; or the frequency with which he treated plaintiff (approximately every 4 to 6 weeks). Nor did the ALJ identify the degree to which Dr. Singh's opinions were supported by the relevant evidence, including the supporting progress notes from treating therapist Mr. Guest who treated plaintiff in tandem with Dr. Singh at Advance Therapeutic Services and Clearing Paths. The Court is unable to discern whether and to what extent the ALJ considered these regulatory factors in assessing Dr. Singh's opinions. This is reversible error.

In addition, the ALJ failed to explain how the "longitudinal record is inconsistent with the severity of the limitations opined." (Tr. 2670). *See Hargett*, 964 F.3d at 552. For example, the ALJ cites evidence showing plaintiff was cooperative, made eye contact, and had goal directed thought processes, normal insight, and judgment. (Tr. 2671). It appears the ALJ may

have been contrasting this evidence with the evidence cited by the ALJ that purportedly supported Dr. Singh's opinion. (Tr. 2670) However, the ALJ never explains "how the substantial evidence is purportedly inconsistent with the treating-source opinion." *Hargett*, 964 F.3d at 552 (citing *Gayheart*, 710 F.3d at 376–77). The ALJ must make "some effort to identify the specific discrepancies and *to explain why* it is the treating physician's conclusion that gets the short end of the stick." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010) (per curiam) (emphasis added). The Court is simply unable to discern the basis for the ALJ's conclusion to afford no deferential weight to Dr. Singh. The ALJ's "failure to follow the procedural requirement 'of identifying the reasons for discounting [Dr. Singh's] opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Id.* at 551 (quoting *Rogers*, 486 F.3d at 243). This is reversible error.

The ALJ committed the same errors with his assessment of the opinion of Mr. Guest, who treated plaintiff for over ten years. (Tr. 3000) Similar to the ALJ's justification in weighing Dr. Singh's opinions, the ALJ stated he did not give "controlling or deferential weight" to Mr. Guest's opinion "as the longitudinal record is inconsistent with the severity of the limitations opined nor is [sic] their [sic] treatment notes on behalf of Mr. Guest." (Tr. 2671). First, the ALJ erred by finding there are no treatment notes completed by Mr. Guest. The record is replete with Mr. Guest's treatment notes. (*See, e.g.,* Tr. 565-67, 628, 629, 630, 631, 632, 633, 634, 635, 636, 637, 638, 639,1007, 1008, 1009, 1011, 1013, 1015, 1128, 1129, 1133, 1134, 1135, 1378-1380, 1382, 1383-84, 1792, 1793). Second, the ALJ merely parrots, verbatim, the

evidence that was purportedly inconsistent with the evidence supporting Dr. Singh's opinions without explaining why the treating source opinions were entitled to no weight. *Friend*, 375 F. App'x at 552.

Finally, the Court notes that the ALJ's failure to follow the Court's instructions on remand in evaluating the treating source opinions is not harmless. The Sixth Circuit has identified three situations in which harmless error might occur: (1) where the "treating source's opinion is so patently deficient that the Commissioner could not possibly credit it"; (2) where "the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion"; and (3) "where the Commissioner has met the goal of . . . the procedural safeguard of reasons." *Shields v. Comm'r of Soc. Sec*., 732 F. App'x 430, 438 (6th Cir. 2018) (quoting *Wilson*, 378 F.3d at 547).

Given the evidence discussed above, the Court cannot say Dr. Singh's opinions are "patently deficient." Indeed, there is ample evidence to support Dr. Singh's opinions, including the generally consistent history of his treatment of plaintiff for depression, anxiety, and bi-polar disorder, and the treatment records and mental health examination findings of treating therapist Guest, who treated plaintiff in tandem with Dr. Singh. Nor did the ALJ adopt Dr. Singh's opinions or make findings consistent with the opinions. *Wilson*, 378 F.3d at 547.

Finally, the undersigned cannot conclude that the goal of 20 C.F.R. § 404.1527(d)(2) has been met. With respect to this circumstance, "'the procedural protections at the heart of the rule may be met when the 'supportability' of a doctor's opinion, or its consistency with other evidence in the record, is indirectly attacked via an ALJ's analysis of a physician's other

28

opinions or his analysis of the claimant's ailments.'" *Shields*, 732 F. App'x at 438 (quoting *Friend*, 375 F. App'x at 551). Here, while the ALJ does address other medical opinions, including examining mental health sources and state-agency psychological consultants, his reasoning for the weight assigned to those opinions is unclear. The ALJ gave "partial weight" to the opinion of state agency medical consultant Dr. Goldsmith, who reviewed the record in September 2007 (Tr. 2667); "partial weight" to the opinion of state agency medical consultant Dr. Lewis, who reviewed the record in August 2009 (Tr. 2668); and "little weight" to the opinion of consultative examiner Dr. Kramer who examined plaintiff in July 2009 (Tr. 2669).[10] With minimal exceptions, the ALJ used the same verbatim "rationale" for *all* of the medical opinions of record.[11] *Compare* Tr. 2667-2668 (Dr. Goldsmith) to 2668-2669 (Dr. Lewin) to 2669-2670 (Dr. Kramer) to 2670-2671 (Dr. Singh) to 2671-2672 (Mr. Guest). The Court is unable to discern how this same body of evidence warranted partial weight to the opinions of the state agency consultants but no weight to the treating source opinions. The ALJ's recitation of this same evidence for each of the medical opinions of record "does not cure the failure to offer any meaningful analysis as to why the opinions of treating physicians were rejected." *Blackburn v. Colvin*, No. 5:12-cv-2355, 2013 WL 3967282, at *7 (N.D. Ohio July 31, 2013).

In sum, the ALJ's decision failed to comply with the Court's directive on remand to properly apply the treating physician rule in weighing Dr. Singh's opinions and to properly

---

[10] The Court notes that Dr. Kramer initially opined that plaintiff was "markedly" limited in her ability to relate with others; maintain attention, concentration, persistence and pace to perform simple and repetitive tasks; and withstand the stress and pressures associated with day-to-day work activities base on his June 2009 consultative examination of plaintiff, which is consistent with the severity assessed by Dr. Singh. (Tr. 575). The following month, a state agency medical consultant asked Dr. Kramer to "resolve the discrepancies" in his report. (Tr. 585). Dr. Kramer then changed his conclusions and changed his "marked" limitations to "moderate" limitations. (Tr. 587).

[11] It appears the same paragraph was cut and pasted below the ALJ's conclusion of the weight to assign each of the particular sources.

assess Mr. Guest's opinion.  The ALJ's decision is not supported by substantial evidence and should be reversed.

### I.  This matter should be remanded for an immediate award of benefits.

Plaintiff's applications for DIB and SSI have now been pending for over 15 years.  The Commissioner, through the ALJ, has issued four decisions denying plaintiff social security benefits.  After the first ALJ decision, plaintiff sought review of that decision with this Court. By joint motion of the parties, the matter was remanded for another hearing.  Following remand, the ALJ again denied benefits.  Plaintiff again sought judicial review.  The Court reversed and remanded based on the ALJ's failure to properly apply the treating physician rule.  A third ALJ hearing was held on remand, and plaintiff's applications were once more denied.  Plaintiff filed another appeal to this Court, which reversed and remanded the ALJ's decision based on his failure to once again properly apply the treating physician rule.  A fourth ALJ hearing was held, and once again the ALJ denied plaintiff's applications.  Plaintiff again appealed to this Court. For the reasons discussed above, the undersigned finds the ALJ again failed to comply the Court's remand order to properly apply the treating physician rule.  The undersigned declines to recommend this matter be remanded for a fifth ALJ hearing with directions to once again properly apply the treating physician rule.

The Commissioner is not entitled to adjudicate a case ad infinitum until it correctly applies the proper legal standards and gathers evidence to support its conclusion.  Dr. Singh's 2010 and 2011 opinions and Mr. Guest's 2011 and 2023 opinions strongly support a finding of disability throughout the relevant time period in this case. "Give these circumstances, and in light

of the strong evidence of record while contrary evidence is lacking, there is no just reason to further delay this matter for even more administrative procedures." *Campbell v. Colvin*, No. 3:15-cv-00363, 2016 WL 6581336, at *3 (S.D. Ohio Nov. 7, 2016), *report and recommendation adopted*, 2016 WL 7496736 (S.D. Ohio Dec. 30, 2016) (citing *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 730 (6th Cir. 2014) (remanding for benefits after 2 remands and 3 administrative hearings and finding, "In light of the extensive opinions of treating physicians as to the severity of Gentry's psoriasis and psoriatic arthritis, we conclude that substantial evidence on the record as a whole supports a finding of total disability."); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication." (other citation omitted)); *Wilder v. Apfel*, 153 F.3d 799, 804 (7th Cir. 1998) ("Given the obduracy evidenced by the action of the administrative agency on remand, we remand the case to the agency with directions that the application for benefits be granted."); *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992) ("Because of the medical record, we think it unconscionable to remand this eight year old case to the Secretary for further review.")).  In light of the Commissioner's patent failure to satisfy the burden of proof at step five, and the long delay that has already occurred as a result of the Commissioner's pattern of erroneous dispositions of the proceedings in this case, a reversal of the ALJ's decision and a judicial award of benefits are warranted.

### IT IS THEREFORE RECOMMENDED THAT:

1. Plaintiff's statement of errors (Doc. 10) be **SUSTAINED.**

2. The Commissioner's non-disability finding be **REVERSED**;

3.  This matter be remanded to the Social Security Administration under Sentence 4 of 42 U.S.C. § 405(g) for an immediate award of benefits based on plaintiff's April 17, 2009 DIB application (protectively filed) and March 31, 2009 SSI application (protectively filed).

4. The case be terminated on the docket of this Court.

Date: 6/4/2024

Karen L. Litkovitz
United States Magistrate Judge

32

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

SAMANTHA K.,                                    Case No. 3:23-cv-268
      Plaintiff,                          Rose, J.
                                                Litkovitz, M.J.
vs.

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.


**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.  This period may be extended further by the Court on

timely motion for an extension.  Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal.  *See Thomas* v. *Arn,* 474 U.S. 140

(1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).

33